IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION


JEFFREY JAMES McHENRY,                    09-CV-961-BR

          Plaintiff,

                                          OPINION AND ORDER

v.

MICHAEL J. ASTRUE,
Commissioner of Social
Security,

          Defendant.


RORY JOSEPH LINERUD
Linerud Law Firm
P.O. Box 1105
Salem, OR 97308-1105
(503) 587-8776

          Attorneys for Plaintiff


DWIGHT C. HOLTON
United States Attorney
ADRIAN L. BROWN
Assistant United States Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR  97204-2902
(503) 727-1003


1   -  OPINION AND ORDER

**DAVID MORADO**
Regional Chief Counsel
**L. JAMALA EDWARDS**
Special Assistant United States Attorney
Social Security Administration
701 5th Avenue, Suite 2900 M/S 901
Seattle, WA  98104-7075
(206) 615-3749

        Attorneys for Defendant


**BROWN, Judge.**

     Plaintiff Jeffrey James McHenry seeks judicial review of a final decision of the Commissioner of the Social Security Administration (SSA) in which the ALJ granted in part and denied in part Plaintiff's protective applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act respectively. This Court has jurisdiction to review the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

     Following a review of the record, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter.


## ADMINISTRATIVE HISTORY

     Plaintiff filed his initial application for DIB on November 28, 2001.  Tr. 69, 87-90.[1]  His application was denied

---

     [1]Citations to the official transcript of record filed by the Commissioner on April 6, 2010, are referred to as "Tr."

2  -  OPINION AND ORDER

initially and on reconsideration.  Tr. 71-75, 78-81.  An
Administrative Law Judge (ALJ) held a hearing on November 13,
2002.  Tr. 326-55.  At the hearing, Plaintiff was represented by
an attorney.  Tr. 326.  Plaintiff and a Vocational Expert (VE)
testified at the hearing.  Tr. 326-55.

An ALJ issued an opinion on June 20, 2003, and found
Plaintiff was not disabled and, therefore, was not entitled to
benefits.  Tr. 264-71.  On review the Appeals Council vacated the
ALJ's decision and remanded the matter for further proceedings
consistent with its Order.  Tr. 307-08, 381.  Accordingly, an ALJ
held additional hearings on May 20, 2003, and January 20, 2005,
at which Plaintiff was represented by an attorney.  Tr. 366, 378.
Plaintiff, a VE, and a Medical Expert (ME) testified at the
hearing on May 20, 2003, and Plaintiff and  a VE testified at the
hearing on January 20, 2005.  Tr. 366, 378.

An ALJ issued a second opinion on April 20, 2005, and found
Plaintiff was not disabled and, therefore, was not entitled to
benefits.  Tr. 16-24.  That decision became the final decision of
the Commissioner when the Appeals Council denied Plaintiff's
request for review.  On July 7, 2005, Plaintiff sought review of
the Commissioner's decision in the District Court for the
District of Oregon.  Tr. 455-56.  Based on a stipulation by the
parties, the Court remanded the matter on April 7, 2006, for
further administrative proceedings.  Tr. 455-56.  Specifically,

the Court ordered the Commissioner to "re-evaluate the medical evidence as a whole with particular attention to the opinions of Drs. Prescott and Westfall.  The ALJ will reevaluate Plaintiff's residual functional capacity and obtain supplemental vocational expert testimony to resolve the vocational issues in this case." Tr. 455.

On May 23, 2005, while the matter was pending before the Court, Plaintiff filed new protective applications for DIB and SSI.  Tr. 426, 651.  The applications were denied initially and on review.  Tr. 426.  Those applications were consolidated with Plaintiff's original November 2001 application for DIB.  Tr. 651. An ALJ held another hearing on November 14, 2006, at which Plaintiff was represented by an attorney.  Tr. 649.  The ALJ issued an opinion on March 30, 2007, and found Plaintiff to be disabled as of November 1, 2005, rather than as of Plaintiff's alleged disability onset date of January 11, 2000.  That decision became the final decision of the Commissioner on June 11, 2009, when the Appeals Council denied Plaintiff's request for review.


## BACKGROUND

Plaintiff was forty-five years old at the time of the most recent hearing.  Tr. 652.  Plaintiff completed his education through the twelfth grade and attended one year of college training as a welder.  Tr. 652.  He has performed past work as a

ride operator, truck driver, log driver, fabricator, lathe operator, welder, and ticker seller. Tr. 652-57, 670. Plaintiff alleges a disability onset date of January 11, 2000. Tr. 69.

In 1993 Plaintiff was involved in a severe automobile accident in which his semi-truck rolled over and caused Plaintiff multiple physical injuries. Tr. 518. Plaintiff has undergone several surgeries since the accident, including repairs to his fractured left clavicle, his fractured right forearm, and arthroscopic surgery on both knees. Tr. 199, 336-38, 518. In 2000 Plaintiff underwent two surgeries to repair a torn rotator cuff in his left shoulder and one surgery to treat carpal tunnel syndrome in his left arm. Tr. 185-86, 194.

Plaintiff alleges he is disabled due to depression, urinary frequency, and pain in his hands, wrists, shoulders, neck, lower back, and knees. Tr. 105, 336-44, 656-61. He alleges his impairments limit his ability to stand and to walk, to sit, to reach, to grip objects, to lift and to carry, to understand and to follow instructions, and to concentrate. Tr. 105, 336-44, 382, 387-95, 656-61.

Except when noted, Plaintiff does not challenge the ALJ's summary of the medical evidence. After reviewing the medical records, the Court adopts the ALJ's summary of the medical evidence. *See* Tr. 427-40.

5    -   OPINION AND ORDER

## STANDARDS

The initial burden of proof rests on the claimant to establish disability. *Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005). To meet this burden, a claimant must demonstrate his inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner bears the burden of developing the record. *Reed v. Massanari*, 270 F.3d 838, 841 (9th Cir. 2001).

The district court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). *See also Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence means more than a mere scintilla, but less than a preponderance, i.e., such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)(internal quotations omitted).

The ALJ is responsible for determining credibility, resolving conflicts in the medical evidence, and resolving ambiguities. *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir.

2001).  The court must weigh all of the evidence whether it
supports or detracts from the Commissioner's decision.  *Robbins,*
466 F.3d at 882.  The Commissioner's decision must be upheld even
if the evidence is susceptible to more than one rational
interpretation.  *Webb v. Barnhart,* 433 F.3d 683, 689 (9th Cir.
2005).  The court may not substitute its judgment for that of the
Commissioner.  *Widmark v. Barnhart,* 454 F.3d 1063, 1070 (9th Cir.
2006).

## **DISABILITY ANALYSIS**

### I.  **The Regulatory Sequential Evaluation**

The Commissioner has developed a five-step sequential
inquiry to determine whether a claimant is disabled within the
meaning of the Act.  *Parra v. Astrue,* 481 F.3d 742, 746 (9th Cir.
2007).  *See also* 20 C.F.R. §§ 404.1520, 416.920.  Each step is
potentially dispositive.

In Step One, the claimant is not disabled if the
Commissioner determines the claimant is engaged in substantial
gainful activity.  *Stout v. Comm'r Soc. Sec. Admin.,*
454 F.3d 1050, 1052 (9th Cir. 2006).  *See also* 20 C.F.R.
§§ 404.1520(a)(4)(I), 416.920(a)(4)(I).

In Step Two, the claimant is not disabled if the
Commissioner determines the claimant does not have any medically
severe impairment or combination of impairments.  *Stout,* 454 F.3d

7   -  OPINION AND ORDER

at 1052.  *See also* 20 C.F.R. §§ 404.1509, 404.1520(a)(4)(ii),
416.920(a)(4)(ii).

In Step Three, the claimant is disabled if the Commissioner
determines the claimant's impairments meet or equal one of the
listed impairments that the Commissioner acknowledges are so
severe as to preclude substantial gainful activity.  *Stout*, 454
F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(iii),
416.920(a)(4)(iii).  The criteria for the listed impairments,
known as Listings, are enumerated in 20 C.F.R. part 404, subpart
P, appendix 1 (Listed Impairments).

If the Commissioner proceeds beyond Step Three, he must
assess the claimant's residual functional capacity (RFC).  The
claimant's RFC is an assessment of the sustained, work-related
physical and mental activities the claimant can still do on a
regular and continuing basis despite his limitations.  20 C.F.R.
§§ 404.1520(e), 416.920(e).  *See also* Social Security Ruling
(SSR) 96-8p.  A 'regular and continuing basis' means 8 hours a
day, for 5 days a week, or an equivalent schedule."  SSR 96-8p,
at *1.  In other words, the Social Security Act does not require
complete incapacity to be disabled.  *Smolen v. Chater*, 80 F.3d
1273, 1284 n.7 (9th Cir. 1996).  The assessment of a claimant's
RFC is at the heart of Steps Four and Five of the sequential
analysis engaged in by the ALJ when determining whether a
claimant can still work despite severe medical impairments.  An

improper evaluation of the claimant's ability to perform specific work-related functions "could make the difference between a finding of 'disabled' and 'not disabled.'"  SSR 96-8p, at *4.

In Step Four, the claimant is not disabled if the Commissioner determines the claimant retains the RFC to perform work he has done in the past.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).

If the Commissioner reaches Step Five, he must determine whether the claimant is able to do any other work that exists in the national economy.  *Stout*, 454 F.3d at 1052.  *See also* 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  Here the burden shifts to the Commissioner to show a significant number of jobs exist in the national economy that the claimant can perform. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  The Commissioner may satisfy this burden through the testimony of a VE or by reference to the Medical-Vocational Guidelines set forth in the regulations at 20 C.F.R. part 404, subpart P, appendix 2. If the Commissioner meets this burden, the claimant is not disabled.  20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).


## ALJ'S FINDINGS

At Step One, the ALJ found Plaintiff has not engaged in substantial gainful activity since his alleged onset date of January 11, 2000.  Tr. 435.  The ALJ noted Plaintiff worked in

9   -  OPINION AND ORDER

all four quarters of both 2003 and 2004, which undermined Plaintiff's claim that he was unable to work during that time. Tr. 435.

At Step Two, the ALJ found Plaintiff has the severe impairments of "residuals status post 2 surgeries for left shoulder rotator cuff tear; carpal tunnel syndrome with residuals status post repair; residuals status post reduction and internal fixation of the left clavicle and right forearm; residual status post right knee arthroscopy; and multilevel cervical degenerative disc disease with disc protrusions at the C5-6 and C6-7." Tr. 435.   The ALJ also found Plaintiff does not have a severe mental impairment.   Tr. 436-37.

At Step Three, the ALJ found Plaintiff had been unable to perform even sedentary work since November 1, 2005, at which time Plaintiff's neck impairment worsened significantly.   Tr. 438. Between January 11, 2000, and November 1, 2005, however, the ALJ found Plaintiff had the residual functional capacity to

> lift[] 20 pounds occasionally 10 pounds
> frequently.  He was able to stand and walk 6
> hours and sit for up to 6 hours total in an 8
> hour workday.  Pushing and pulling was
> limited in his upper extremities.  The
> claimant was precluded from climbing
> scaffolds ladders and ropes but could
> frequently climb ramps or stairs.  He was
> also able to frequently balance, stoop,
> kneel, crouch or crawl.  Multiple
> manipulative limitations were stated.
> Reaching in all directions including overhead
> reaching and gross manipulation was limited
> to occasional in both upper extremities.

>           Fingering and feeling are unlimited.
>           Repetitive gripping with both hands and for
>           reaching overhead is to be avoided.  The
>           claimant was also limited to avoiding
>           concentrated exposure to hazards such as
>           machinery or heights.

Tr. 439.

At Step Four, the ALJ concluded Plaintiff is unable to perform any of his past relevant work.  Tr. 440.

At Step Five, the ALJ concluded Plaintiff was unable to perform a full range of sedentary work as of November 1, 2005, and, therefore, was disabled under the Social Security Act. Tr. 440.  Between Plaintiff's alleged onset date of January 11, 2000, and November 1, 2005, the ALJ concluded Plaintiff had a sufficient RFC to perform jobs that exist in significant numbers in the national economy.  Tr. 440-41.  Specifically, the ALJ found Plaintiff had the ability to perform jobs that require light work such as information clerk, storage-facility clerk, and usher.  Tr. 440.  In addition, the ALJ found even if Plaintiff were limited to sedentary work (*i.e.*, lifting 10 pounds occasionally with his right arm and one pound with his left arm with no repetitive gripping with his left arm), Plaintiff could perform the following sedentary positions with the use of only one arm:  telephone clerk, charge-account clerk, and food-order clerk.  Thus, the ALJ concluded Plaintiff is disabled and, therefore, is entitled to Social Security benefits as of November 1, 2005, but not before that time.

11  -  OPINION AND ORDER

## DISCUSSION

Plaintiff contends the ALJ erred by (1) failing to find Plaintiff has a severe mental impairment, (2) improperly discrediting Plaintiff's testimony that his neck impairment became severe in 2003, (3) failing to include all of Plaintiff's functional limitations in the formulation of Plaintiff's RFC, (4) relying on VE testimony that was based on an incomplete hypothetical that did not include all of Plaintiff's functional limitations, and (5) relying on testimony from the VE that was inconsistent with the Dictionary of Occupational Titles (DOT).

**I.   Plaintiff's Mental Impairment.**

Plaintiff contends the ALJ erred by rejecting medical evidence that establishes Plaintiff has a severe mental impairment that significantly limits his ability to perform work-related functions.  In particular, Plaintiff contends the ALJ improperly disregarded the limitations set out by Alison Prescott, Ph.D., who performed a consultative examination of Plaintiff on January 2, 2003.  Tr. 254-60.  In her report Dr. Prescott diagnosed Plaintiff with Major Depressive Disorder and Generalized Anxiety Disorder.  Tr. 258.  Dr. Prescott opined Plaintiff has moderate limitations (defined as "still able to function satisfactorily") in his ability to understand, to remember, and to carry out detailed instructions; to interact appropriately with the public; and to respond appropriately to

changes in a routine work setting.  Tr. 259-60.  Dr. Prescott
also stated Plaintiff has marked limitations (defined as "the
ability to function is severely limited but not precluded") in
his ability to respond appropriately to work pressures in a usual
work setting.  Tr. 260.  Ultimately Dr. Prescott concluded
Plaintiff has difficulty sustaining concentration and suffers
increased pain levels under the stress of work.  Tr. 260.

    In reaching the determination that Plaintiff does not have a
severe mental impairment, the ALJ summarized and considered the
report by Dr. Prescott, but the ALJ gave "little weight" to her
assessment and provided numerous grounds for doing so.  Tr. 429-
30, 436-37.  For example, the ALJ noted Dr. Prescott's report
indicates Plaintiff was mistakenly assigned to receive a
consulting psychological exam based on another person's medical
records that had become part of Plaintiff's file in error.
Tr. 429.  Despite the fact that Plaintiff had been referred to
Dr. Prescott to review Plaintiff's diagnosis for "Bipolar
Disorder," a condition for which  Plaintiff has never been
treated, Dr. Prescott examined Plaintiff.  Tr. 254-55, 429.  In
fact, the record reflects Plaintiff saw a psychologist twice
briefly in 1998 for anxiety and was not otherwise treated for
mental impairments before Dr. Prescott examined him.  Tr. 255,
519.  The ALJ noted Plaintiff's lack of treatment history as one
of the grounds for discrediting Dr. Prescott's assessment.

Tr. 436.

The ALJ also noted internal inconsistencies in
Dr. Prescott's report.  For example, despite Dr. Prescott's
conclusion that Plaintiff suffers from an inability to
concentrate, she noted in her report that Plaintiff "demon-
strated good concentration."  Tr. 257.  The ALJ also noted
Plaintiff stated he read science-fiction novels for "several
hours per day," which the ALJ found undermined Dr. Prescott's
opinion and Plaintiff's complaints of an inability to concentrate
due to pain.  Tr. 256, 436.

The ALJ also discredited Dr. Prescott's opinion with
respect to the extent of Plaintiff's impairment on the ground
that Dr. Prescott's assessment appears to rely almost exclusively
on Plaintiff's self-reported limitations, which the ALJ found to
be inconsistent.  Tr. 436.  For example, the ALJ noted Plaintiff
stated he could only sit "without severe pain" for 15-20 minutes,
but he was able to drive himself 360 miles from California where
he was living with his mother to Eugene, Oregon, for the
examination without complaining of pain to Dr. Prescott.
Tr. 254, 256-57, 436.  The ALJ also found Plaintiff's reported
ability to perform daily activities such as household chores were
inconsistent with his complaints of debilitating pain.  Tr. 436.

In support of the finding that Plaintiff does not have a
severe mental impairment, the ALJ relied on the conclusions of

Joe M. Azevedo, Ph.D., who performed a consultative psychological
examination of Plaintiff on July 19, 2005.  Tr. 429, 436, 518-22.
In contrast to Dr. Prescott, Dr. Azevedo diagnosed Plaintiff with
only an adjustment disorder with anxiety and depressed moods and
noted Plaintiff suffers from "some reactive depression and
anxiety [related to his automobile accident] that does not appear
to be severe.  The present examination does not reveal any
significant neurocognitive deficits."  Tr. 521.  Dr. Azevedo
concluded:

> The present examination does not reveal
> significant psychological limitations in his
> ability to maintain concentration,
> persistence, and pace.  There is no evidence
> of impairment in his ability to make
> judgments on work-related decisions.  He may
> have some mild difficulty managing work
> pressures, due to his mental stress and
> fatigue.  The patient has the abilities to
> respond to changes in a work setting.  His
> ability to interact appropriately with
> supervisors, co-workers, and the general
> public is not significantly impaired.  He
> does not appear to have psychological
> restrictions in managing activities of daily
> living.

Tr. 521-22.  The ALJ weighed these two examinations; considered
them in light of the conclusions of Disability Determination
Services (DDS)[2] psychologists H.N. Hurwitz, M.D., and Kenneth D.
Michael, M.D., that Plaintiff does not have a severe mental

---

[2] Disability Determination Services (DDS) is a federally
funded state agency that makes eligibility determinations on
behalf and under the supervision of the Social Security
Administration pursuant to 42 U.S.C. § 421(a).

impairment; and found Dr. Azevedo's opinion was most consistent
with the record.  Tr. 429-30, 436-37, 525-38, 568-80.

Plaintiff contends Dr. Azevedo's conclusion that Plaintiff
is not "significantly" impaired suggests Plaintiff has some level
of impairment.  At Step Two, however, an impairment is only
severe if it "significantly limits" a claimant's "physical
or mental ability to do basic work activities."  20 C.F.R.
§§ 404.1521(a), 416.921(a).  *See also Ukolov*, 420 F.3d at 1003.
Dr. Azevedo found Plaintiff "has the general cognitive abilities
to understand, remember, and carry out one- and two-step
instructions of mild to moderate levels of complexity," and he
ultimately concluded Plaintiff did not exhibit "any significant
neurocognitive deficits" or any other significant limitations.
Tr. 521-22.

Plaintiff contends the opinions of the DDS physicians should
"be discounted" because at the time of their reviews of the
record, the "first ALJ opinion was affirmed."  Although
Plaintiff's argument is not entirely clear, the Court notes
Dr. Hurwitz's opinion appears to have occurred in October 2006
after the Court had remanded the matter.  Tr. 525.  Dr. Hurwitz's
notes reflect he reviewed Plaintiff's records from October 2004
to the time of his review, including the report by Dr. Azevedo,
and reached the conclusion that Plaintiff did not have a severe
mental impairment.  Tr. 524.  Dr. Michael appears to have

reviewed Plaintiff's file on August 15, 2005, and reached the same conclusion at that time.  Tr. 568.  Nothing in the record suggests either physician was influenced by the procedural posture of these proceedings at the time of their review or by the decision of the Appeals Council nor does Plaintiff offer any evidence to support such an allegation.  Furthermore, Plaintiff does not provide any legal authority for the proposition that a DDS physician's review should be discounted because the physician knows the ALJ's decision was upheld by the Appeals Council.  In any event, there were very few treatment records for the DDS physicians to evaluate because Plaintiff had apparently sought treatment only twice in 1998 for anxiety.  Drs. Hurwitz and Michael appear to have considered the existing record as a whole, which included at that time the consultative examinations by Drs. Azevedo and Prescott, and formed their conclusions based on that record.

The Court also notes James M. Wahl, Ph.D., testified at length at the hearing on May 20, 2003, that Dr. Prescott's findings were flawed and that Plaintiff's mental impairment was not severe.  Tr. 371-75.

On this record, the Court concludes the ALJ provided legally sufficient reasons supported by substantial evidence in the record for the ALJ's assessment that Plaintiff does not suffer from a severe mental impairment.  Thus, the Court finds the ALJ

did not err by finding Plaintiff's mental impairment is not
severe.

## II.  Plaintiff's Credibility.

Plaintiff contends the ALJ erred when he rejected
Plaintiff's testimony with respect to the onset and severity of
Plaintiff's neck impairment.  Plaintiff contends his neck
impairment is degenerative and that it became disabling in 2003.

Plaintiff testified at the November 14, 2006, hearing that
"[a]bout 2003 [his neck pain] started in, and it's gradually
gotten worse."  Tr. 674.  When asked when his neck impairment
became severe, Plaintiff responded:  "About six to eight months
ago" or at the beginning of 2006.  Tr. 674.  Thus, Plaintiff did
not, in fact, testify that his neck impairment became severe in
2003, but that the pain began in 2003 and became severe in early
2006.  Tr. 674.  Plaintiff does not point to any evidence in the
record that shows he suffered from a severe neck impairment as of
2003, but merely contends he was necessarily disabled before
November 1, 2005, because his condition is degenerative.
Moreover, the record does not appear to reflect Plaintiff
complained of severe neck pain before late 2005.  For example, at
the hearings on November 13, 2002, and May 20, 2003, Plaintiff
did not make any complaints about debilitating neck pain.
Tr. 326-77.

The ALJ noted Plaintiff's reported activities of daily

living and ability to work in 2003 and 2004 contradicted
Plaintiff's statements that he was totally disabled between
January 2000 and November 2005.  Tr. 437, 521.  For example, the
ALJ noted the treatment records of Steve McIntire, M.D., who
evaluated Plaintiff's physical health and assessed his functional
capacity.  Tr. 431.  Those records reflect Plaintiff had
"significant callusing" on his hands, suggestive of "frequent
power gripping activities."  Tr. 552, 555.  Plaintiff, in fact,
reported pain due to lifting and hauling logs, which the ALJ also
noted is inconsistent with Plaintiff's stated inability to
perform even sedentary work.    Tr. 597.  Moreover, the ALJ found
Plaintiff's lack of reliance on any pain medication undermines
Plaintiff's complaints of debilitating pain.  Tr. 314, 387, 438.
Although Plaintiff challenges the ALJ's failure to credit
Plaintiff's statement about the severity of his neck pain,
Plaintiff does not otherwise challenge the above assessment of
Plaintiff's credibility.

    In any event, the ALJ did not specifically discount
Plaintiff's testimony regarding his neck impairment and, in fact,
concluded Plaintiff's neck impairment was so severe that it
rendered him disabled as of November 1, 2005.  Tr. 438, 441.  The
ALJ referred to the treatment notes by Plaintiff's treating
physician Walid Faraj, M.D., and to an x-ray and an MRI of
Plaintiff's cervical spine that showed a worsening of Plaintiff's

neck impairment in early 2006.  Tr. 619-20, 624.  In particular,
the diagnostic imaging showed degenerative disk disease, cervical
spondylosis, disk bulges, and nerve impingement in Plaintiff's
cervical spine.  Tr. 619-20, 624.  These medical findings
correspond with Dr. Faraj's treatment records, which indicate
after nearly a dozen visits to Dr. Faraj to treat an arm lesion
in the middle of 2005, Plaintiff began complaining of neck and
right shoulder pain in late 2005 and early 2006.  Tr. 595-609.
Thus, the medical records support Plaintiff's testimony that his
neck pain became severe at least by early 2006.

     In summary, the Court concludes on this record that the ALJ
did not err in the evaluation of Plaintiff's credibility or in
the determination of the onset date of disability due to
Plaintiff's neck impairment because the ALJ gave legally
sufficient reasons supported by substantial evidence in the
record for those conclusions.

**III. Plaintiff's RFC.**

     Plaintiff also contends the ALJ erred by failing to include
all of Plaintiff's functional limitations in the ALJ's evaluation
of Plaintiff's RFC.  Specifically, Plaintiff contends the ALJ
failed to include the limitations resulting from Plaintiff's
mental impairment, his inability to use left-handed controls, and
his inability to reach overhead.

     With respect to Plaintiff's alleged limitations resulting

from his mental impairment, the Court has already determined the ALJ did not err.  The Court, therefore, does not need to address that argument.

Plaintiff contends the ALJ should have included a limitation on Plaintiff's use of left-handed controls. Occupational therapist Travis M. Hoffman evaluated Plaintiff's physical capacity for two hours on December 5, 2001, at the direction of Christopher Walton, M.D., Plaintiff's treating physician at the time.  Tr. 313, 318.  In his report, Hoffman noted Plaintiff could operate hand controls with his left hand on an occasional basis only.  Tr. 320.

The ALJ noted Dr. Walton reviewed and accepted Hoffman's recommendation as to Plaintiff's functional limitations, and the ALJ assigned "great weight" to that recommendation.  Tr. 439.  At Step Three, the ALJ included limitations on Plaintiff's use of his left hand in Plaintiff's RFC as follows:  Plaintiff's "gross manipulation [is] limited to occasional in both upper extremities. . . .  Repetitive gripping with both hands . . . is to be avoided."  Tr. 439.  Plaintiff does not offer any explanation as to why these limitations included in the ALJ's evaluation of Plaintiff's RFC do not sufficiently encompass Hoffman's opinion as to Plaintiff's limitation to occasional use of left-handed controls.

Even if the ALJ's evaluation of Plaintiff's RFC had not

21  -  OPINION AND ORDER

encompassed the restriction to occasional use of left-handed controls, the ALJ asked the VE at the hearing on November 14, 2006, to consider a more restrictive hypothetical that limited the claimant to sedentary work with the right arm and to lifting no more than one pound without repetition with the left arm and prohibited repetitive gripping with the left hand.  Tr. 441, 673. Based on that hypothetical, the VE found the claimant would still be able to perform the one-handed, sedentary jobs of telephone clerk, charge-account clerk, and food-order clerk.   Tr. 673.

Finally, Plaintiff contends the ALJ included inconsistent limitations in Plaintiff's RFC with respect to "overhead reaching."  Plaintiff contends the ALJ limited Plaintiff to both "occasional" overhead reaching and to "no" overhead reaching.  In fact, the ALJ limited Plaintiff to occasional overhead reaching ("Reaching in all directions including overhead reaching and gross manipulation was limited to occasional in both upper extremities.") and to avoiding overhead reaching with repetitive gripping ("Repetitive gripping with both hands and for reaching overhead is to be avoided.").  Tr. 439.  These limitations were included in one of the hypotheticals that the ALJ posed to the VE at the hearing.  Tr. 672.

The Court concludes on this record that the ALJ did not include inconsistent limitations on Plaintiff's ability to reach overhead when the ALJ assessed Plaintiff's RFC.

**IV.  ALJ's Hypothetical to the VE.**

Plaintiff also contends the ALJ gave an inaccurate hypothetical to the VE by failing to include Plaintiff's mental limitations, failing to include the limitations on his use of left-handed controls, and providing inconsistent limitations on Plaintiff's ability to reach overhead.  With respect to the first two asserted grounds for error, the Court has already addressed Plaintiff's arguments and need not do so again here.

Plaintiff contends the ALJ erred in the hypothetical to the VE by describing Plaintiff's limitation on overhead reaching as "moderate" rather than "occasional."  Tr. 672.  Plaintiff contends the ALJ's description of Plaintiff's limitation as "moderate" is vague and potentially affected the VE's testimony with respect to the light-exertion positions of information clerk and storage-facility clerk.  Although Plaintiff contends the DOT reflects those positions require "frequent reaching," Plaintiff does not indicate whether "frequent reaching" includes "overhead reaching" for those positions and does not provide any specific citations to the DOT to support his position.  The Court has reviewed the DOT description for information clerk (237.367-018) and storage-facility clerk (295.367-026) and finds neither description references the frequency of required reaching.  *See* U.S. Dep't of Labor, *Dictionary of Occupational Titles* 207, 234 (4th ed. 1991).  Thus, the Court does not have any basis to

23  -  OPINION AND ORDER

conclude the ALJ's hypothetical to the VE was erroneous or that the use of the term "moderate" had any impact on the VE's determination that the claimant could perform these two jobs.

The Court notes even if the ALJ's hypothetical to the VE was inaccurate and Plaintiff is not capable of performing the light-exertion positions of information clerk or storage-facility clerk, the VE also found Plaintiff capable of the light-exertion position of usher.  Tr. 672.  Moreover, the ALJ also posed a more limiting hypothetical in which a claimant could essentially only use his right arm, and the VE found Plaintiff would be capable of performing the sedentary positions of telephone clerk, charge-account clerk, and food-order clerk.  Tr. 672-73.  Plaintiff does not challenge the VE's testimony or the ALJ's findings with respect to the sedentary jobs Plaintiff is capable of performing.

Based on this record, the outcome as to Plaintiff's claims for DIB and SSI benefits would remain the same even if the ALJ erred with respect to the description of Plaintiff's reaching limitation as moderate, and, therefore, the Court finds any error by the ALJ was harmless.  *See Stout v. Comm'r*, 454 F.3d 1050, 1055-56 (9th Cir. 2006)("The Court may only find harmless error when it is clear from the record that the ALJ's error is 'inconsequential to the ultimate nondisability determination.'").

**V.  Testimony by the VE.**

Plaintiff contends without specific citations to the DOT

that the ALJ erred by relying on testimony from the VE that was
inconsistent with the DOT.  Plaintiff contends (1) the positions
of information clerk and storage clerk require "frequent
handling" despite the ALJ's limitation of Plaintiff to occasional
handling and (2) the position of usher requires "frequent
reaching" despite the ALJ's limitation of Plaintiff to moderate
or occasional reaching.

     Although Plaintiff contends the ALJ limited Plaintiff to
"occasional handling," the ALJ, in fact, found Plaintiff's
"fingering and feeling" abilities were unlimited and Plaintiff's
"gross manipulation" should be occasional.  Tr. 439.  The DOT
listings for information clerk and storage-facility clerk do not
reference the frequency of handling required to perform those
jobs.  DOT at 207, 234.  Thus, the Court does not find any error
in the VE's testimony because Plaintiff, though limited in his
ability to grossly manipulate objects, is capable of handling
objects without restriction, and, therefore, there is not any
basis to conclude the VE's testimony is inconsistent with the
DOT.  Tr. 439.

     Plaintiff also contends the position of usher (344.677-014)
requires frequent reaching because an usher would necessarily
need to point patrons to their seat.  Plaintiff asserts an usher
in a multi-level arena would have to point to seating locations
above his head, which would exceed Plaintiff's capabilities as to

25  -  OPINION AND ORDER

overhead reaching.  Based on the medical evidence, the ALJ, however, found Plaintiff is capable of occasional overhead reaching and is only prohibited from overhead reaching with repetitive gripping.  Tr. 439.  Moreover, the DOT entry for usher does not reflect any reaching requirements for the position.  DOT at 253.  Thus, the Court does not find any basis to conclude the VE's testimony contradicts the DOT.

Even if the ALJ erred by relying on VE testimony that was inconsistent with the DOT with respect to the light-exertion positions, the Court concludes the error is harmless in light of the ALJ's determination that there are sedentary positions Plaintiff could perform even if he were limited to the use of his right hand only.  *See Stout*, 454 F.3d at 1055-56.


## CONCLUSION

For these reasons, the Court **AFFIRMS** the decision of the Commissioner and **DISMISSES** this matter **with prejudice**.

IT IS SO ORDERED.

DATED this 14th day of December, 2010.


/s/ Anna J. Brown

_____
ANNA J. BROWN
United States District Judge


26  -  OPINION AND ORDER